IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE VILLANUEVA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RABOBANK, N.A.,<br><br>　　　　Defendant. | Case No. 23-cv-00825-CRB<br><br>**ORDER GRANTING MOTION TO REMAND** |

　　This case involves Defendant Rabobank's allegedly deceptive and unlawful collection of overdraft (OD) fees from its customers. Now pending is Plaintiff Joe Villanueva's motion to remand the case to state court, where it came from. Mot. (dkt. 16). As explained below, the Court grants the motion.

**I.　BACKGROUND**

　　Five years ago, Villanueva brought a putative class action in California Superior Court, County of San Diego. See Compl. (dkt. 1-3) at 4–15. That complaint alleged that Rabobank breached its contract with its customers and violated California's Unfair Competition Law (UCL) by assessing both continued OD fees and OD fees on the same transaction. Id. Rabobank compelled arbitration, but the arbitrator ultimately found the arbitration agreement unenforceable. Kim Decl. (dkt. 16-3) Ex. B (Award of Arbitrator) at 5.[1] The case was transferred to the County of Contra Costa, and discovery began. Notice of Removal Ex. B (dkt. 1-4) at 8.

　　As of January 21, 2022, Rabobank was aware that Villanueva was looking into

---

[1] See also id. at 3 (stating in 2021: "This case has a long history.").

whether Rabobank had violated 12 C.F.R. § 1005.17 (Regulation E), a regulation that requires customers to affirmatively consent to optional OD fee programs. Notice of Removal Ex. B (dkt. 1-4) at 101–02 (1/21/2022 email from plaintiff's counsel); see also id. at 100 (1/23/2022 email from defense counsel: "We now understand that the opt-in form is an issue that you would like to further discuss, and we are happy to engage in written or oral discussions on Rabobank's compliance with Regulation E and the form at issue, and if necessary, tee up the issue for the court."); id. at 96 (2/10/2022 email from defense counsel re "various conversations we are having in this case, including the Reg. E issue that your firm has raised and the proposal of an amended complaint."). On March 30, 2022, the parties stipulated to allow Villanueva to file an amended complaint. See Notice of Removal Ex. B (dkt. 1-3) at 450–51.

Villanueva filed the First Amended Complaint (FAC) on April 15, 2022. See FAC (dkt. 1-3) at 467–81. Although the FAC again included just a single breach of contract claim and a single UCL claim, id. ¶¶ 52–71, it added a new theory under the UCL explicitly based on Regulation E: that Rabobank charged its checking account customers certain OD fees without their affirmative consent or opt-in, id. ¶¶ 6, 34–41. The FAC thus alleged that Rabobank violated the UCL "by misrepresenting and failing to appropriately disclose that the Continuing Overdraft Fee is assessed in addition to a per-item OD Fee" (the original theory) and because "it violates the opt-in requirements of [Regulation E], which serves as a predicate to the UCL's unlawful prong" (the new theory). Id. ¶¶ 63–64.

On December 2, 2022, Rabobank filed a demurrer requesting that the FAC "be dismissed in its entirety without leave to amend," because the FAC failed to state a breach of contract claim and a UCL violation based on either the continuing overdraft fee theory or the automatic opt-in/Regulation E theory. See generally Notice of Demurrer (dkt. 1-6) at 257 (emphasis added); Kim Decl. Ex. A (dkt. 16-2) (demurrer). Rabobank argued as to the Regulation E theory: "Plaintiff's new claims can be promptly disposed of for the simple reason that he has not pled any facts in support of it." Kim Decl. Ex. A (dkt. 16-2) (demurrer) at 11. Rabobank also filed a motion to strike the proposed "no opt-in class."

2

1   See generally Notice of Removal Ex. B (dkt. 1-6) (motion to strike) at 182–88.  Villanueva

2   opposed both motions, see id. at 343–64 (opposition to demurrer); id. at 285–300

3   (opposition to motion to strike), and Rabobank filed replies in support of both motions, see

4   id. at 371–81 (reply re demurrer); id. at 384–89 (reply re motion to strike).

5         The state court granted the motion to strike and overruled the demurrer, holding as

6   to the Regulation E theory that the FAC failed to adequately allege a UCL violation

7   premised on Regulation E because it did not "allege facts to show that Plaintiff has

8   sustained injury" pursuant to Regulation E.  Notice of Removal Ex. B (dkt. 1-6) (minute

9   order of 2/2/2023, hearing on motion to strike) at 508.  Regulation E requires a bank

10  customer to affirmatively opt in to overdraft protection before a bank may charge OD fees

11  for covering ATM withdrawals or one-time debit-card transactions.  See 12 C.F.R. §

12  1005.17(b).  The state court noted that allegations of injury based on ATM or debit card

13  transactions were absent in the FAC, but concluded—in light of a declaration from

14  Villanueva's counsel opposing the demurrer—that Villanueva "may be able to amend" to

15  add such allegations.  Notice of Removal Ex. B (dkt. 1-6) (minute order of 2/2/2023,

16  hearing on motion to strike) at 508.

17        Villanueva filed the Second Amended Complaint (SAC) on February 14, 2023.  See

18  SAC (dkt. 1-1).  The SAC still included just a single breach of contract claim and a single

19  UCL claim.  Id. ¶¶ 56–75.  But it added additional facts about Villanueva's injury under

20  Regulation E: nine instances when Villanueva incurred OD fees on ATM withdrawals and

21  one-time debit transactions.  See id. ¶ 27.  On February 23, 2023, ten days after Villanueva

22  filed the SAC, and over four-and-a-half years after Villanueva first brought suit, Rabobank

23  removed the case to federal court, asserting that there is federal question jurisdiction

24  because the SAC arises under Regulation E.  See Notice of Removal (dkt. 1) at 1.

25        Villanueva now moves to remand.  The Court held a hearing on this motion on June

26  9, 2023, see Motion Hearing (dkt. 24), and took the matter under submission.

27  **II.  LEGAL STANDARD**

28        A defendant may remove "any civil action brought in a State court of which the

3

district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). District courts have federal question jurisdiction over civil actions that "aris[e] under the Constitution, laws, or treaties of the United States." Id. § 1331. A case can "aris[e] under" federal law in two ways. First, "a case arises under federal law when federal law creates the cause of action asserted." Gunn v. Minton, 568 U.S. 251, 257 (2013). Second, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id. at 258 (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313–14 (2005)).

Federal district courts have supplemental jurisdiction over related claims, 28 U.S.C. § 1367(a), so a defendant may remove where there is federal jurisdiction over a single claim. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 562–63 (2005). Where "the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. 1446(b)(3).

There is a "strong presumption" against removal jurisdiction, and courts "strictly construe the removal statute against removal." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). This "means that the defendant always has the burden of establishing that removal is proper." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation and internal quotation marks omitted). Any doubt regarding the legitimacy of the removal favors remanding the case to state court. Id.

**III. DISCUSSION**

Villanueva makes two main arguments in support of remand. First, he argues that removal was untimely because it occurred more than thirty days after Rabobank had notice that the case was removable. Mot. at 6–8.[2] Second, Villanueva argues that his claims are

---

[2] Relatedly, Villanueva insists that Rabobank waived its right to remove the case when it had notice that the case was removeable but—instead of removing—chose to file a demurrer and

4

based in state law and not on a federal question, and so even if timeliness is not at issue, jurisdiction is. Id. at 9–11. The Court need not reach the second argument, because removal was untimely.

The key rule is that where "the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. 1446(b)(3). Where removal occurs more than thirty days after a case became removeable, it is untimely. See, e.g., Rafiqzada v. U.S. Bank Nat. Ass'n, No. C 02-3316 SI, 2002 WL 31430319, at *3 (N.D. Cal. Oct. 29, 2002) ("The statute is unequivocal: defendants must remove within thirty days after they first receive information of the case's removable status."); Reeves v. Leasure, No. 21-CV-00325-CRB, 2021 WL 942578, at *4 (N.D. Cal. Mar. 12, 2021) (removal untimely where it occurred more than thirty days after receiving summons naming individual as defendant). Neither party contends that the original complaint was removable—it did not raise the Regulation E issue—so the question is when the case became removable.[3]

### A.   The Parties' Positions

Villanueva contends that the FAC put Rabobank on notice on April 15, 2022[4] that the UCL claim relied on Regulation E, and so if the UCL claim raises a federal question, Rabobank should have removed the case within thirty days of April 15, 2022. Mot. at 6; see also Reply at 1 ("Defendant's asserted grounds for removal—the allegation that Defendant improperly opted-in customers into its optional overdraft fee program in violation of Regulation E . . . —have been unequivocally clear and certain, and therefore

---

motion to strike in state court. Id. at 8–9.
[3] This analysis accepts for the sake of argument Rabobank's assertion that the case is now properly removable, due to the inclusion of the Regulation E theory of the UCL claim.
[4] Villanueva points to a slew of correspondence between the parties about the Regulation E issue that predates the filing of the FAC, but contends that, in any case, the April 15, 2022 FAC made clear that the UCL claim was "predicated [in part] on violation of Regulation E." See Mot. at 3–4; Reply (dkt. 22) at 1–3.

5

ascertainable by Defendant, for at least a year."). Indeed, Rabobank has previously recognized that the FAC was an important landmark in the case: "The FAC . . . raised an entirely new and different theory: specifically, that Rabobank 'automatically' enrolled Plaintiff and other customers into its overdraft service for ATM and everyday debit transactions, in violation of 12 C.F.R. § 1005.17 ('Regulation E')." Kim Decl. Ex. A (dkt. 16-2) (demurrer) at 8.

      Rabobank responds that while the FAC asserted a UCL violation predicated on a violation of Regulation E, the FAC did not trigger Rabobank's thirty day deadline to remove the case because it did not <u>adequately</u> plead a UCL violation predicated on a violation of Regulation E. See Opp'n (dkt. 21) at 3 ("the FAC contained no <u>facts</u> alleging Plaintiff ever <u>incurred</u> any OD fees on his Rabobank checking account for ATM withdrawals or one-time debit card transactions, such that affirmative consent would have been required by federal law."). Rabobank states that this is partly why it filed the demurrer: "without alleging Plaintiff paid any OD fees for any ATM or one-time debit card transactions, the FAC did not allege any violation of Regulation E." Id.[5]; see also Kim Decl. Ex. A (demurrer) at 11 ("he does not allege that he was charged any fees whatsoever for overdrafts <u>resulting from ATM or one-time debit card transactions</u>.") (emphasis in original). Rabobank further argues that the state court agreed with it by granting the motion to strike, see Opp'n at 4 (citing Notice of Removal Ex. B (dkt. 1-6) at

---

[5] The demurrer was about far more than just the absence of allegations that Villanueva had incurred fees in violation of Regulation E, <u>see generally</u> Kim Decl. Ex. A, which is relevant to the issue of waiver. If the FAC adequately invoked federal jurisdiction, then Rabobank's filing of the demurrer and motion to strike, seeking to have the FAC "dismissed <u>in its entirety</u> without leave to amend," Notice of Demurrer (dkt. 1-6) at 257 (emphasis added), would represent Rabobank availing itself of the state court's jurisdiction, and therefore waiving the right to remove. <u>See</u> <u>Resol. Tr. Corp. v. Bayside Devs.</u>, 43 F.3d 1230, 1240 (9th Cir. 1994), as amended (Jan. 20, 1995) (a party "may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest [their] intent to have the matter adjudicated there, and to abandon [their] right to a federal forum."); <u>Kenny v. Wal-Mart Stores, Inc.</u>, 881 F.3d 786, 791–92 (9th Cir. 2018) (no waiver where defendant filed demurrer but removed the case before plaintiff opposed demurrer "and before any hearing was held, let alone any ruling issued."). But the waiver issue is rather academic here. If the FAC started the removal clock, then—whether or not Rabobank filed the demurrer—removal more than thirty days thereafter was untimely. If the FAC did not start the removal clock, then Rabobank could proceed however it liked in state court.

6

508) (FAC failed to "allege facts to show that Plaintiff has sustained injury" pursuant to Regulation E), and that it was only when Villanueva filed the SAC that he had actually "allege[d] facts triggering removal jurisdiction," id. at 17.

The Court now turns to the question of what put Rabobank on notice that the case was removable to federal court, triggering the thirty-day deadline to remove.

**B.     FAC**

It is quite possible that the FAC triggered the removal clock. The FAC made clear in April of 2022 that Villanueva was alleging a UCL claim predicated in part on the violation of a federal regulation. FAC ¶ 64. That is precisely the basis that Rabobank offered for removing the case in February of 2023. See Notice of Removal at 2 ("Plaintiff's claims in the SAC arise under a federal regulation, Regulation E"). Amended complaints are one type of document that can trigger the removal clock. See 28 U.S.C. 1446(b)(3) ("notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable."). The wrinkle here is that the allegations in the FAC were imperfect, failing to "allege facts to show that Plaintiff has sustained injury" pursuant to Regulation E. See Notice of Removal Ex. B (dkt. 1-6) (minute order of 2/2/2023, hearing on motion to strike) at 508.

Rabobank has not cited to any authority holding that a claim must be able to survive a motion to strike in order to trigger the removal clock. Rather, in its briefing and again at the motion hearing, Rabobank relied on Dietrich v. Boeing Co., 14 F.4th 1089 (9th Cir. 2021). See Opp'n at 14–18. While earlier authority allowed for removal if a complaint specifically raised a federal question on its face, even if the allegations were vague, see, e.g., Dozler v. City of St. Helens, No. CIV 08-1127-HA, 2009 WL 152509, at *3 (D. Or. Jan. 21, 2009), the Ninth Circuit held in Dietrich, 14 F.4th at 1091, that the "removal clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.'" In Dietrich, a plaintiff diagnosed with mesothelioma sued a number of defendants in connection with her husband's asbestos exposure, but did not initially allege such exposure

7

through defendant Boeing's work for the military, which "would have alerted Boeing to a possible basis for removal to federal court under the federal officer removal statute." Id. All of the available information was "ambiguous or misleading as to whether [the plaintiff's] claims against Boeing were related to her husband's service in the military." Id. at 1095. Boeing was therefore not on notice that the case was removable until the plaintiff filed amended discovery responses that stated for the first time that she was exposed to asbestos through her husband's exposure to Boeing aircraft while in the Marines. Id. at 1092. The circuit adopted the "unequivocally clear and certain" standard, and concluded that it only became unequivocally clear and certain that the case was removable when Boeing received the amended discovery responses. Id. at 1095. It explained that such a standard would "'avoid[] gamesmanship in pleading,' preventing plaintiffs from strategically starting the removal clock without the defendants' realization, while still allowing plaintiffs to start the clock and prevent strategic delays simply by making the basis for removal unequivocally clear and certain." Id.

Here, in contrast to Dietrich, there was nothing vague or misleading about the FAC. There is no reason to believe that Villanueva was hiding the ball from Rabobank. Villanueva's intent to bring a claim against Rabobank predicated on a federal regulation was unequivocally clear and certain. See FAC ¶ 64 ("Defendant's practice is also unlawful as it violates the opt in requirements of 12 C.F.R. Section 205.17, which serves as a predicate to the UCL's unlawful prong"). The FAC specifically alleged that "Rabobank improperly opted [Villanueva] into the overdraft program," using a "systematic practice of automatic electronic opt ins." Id. ¶ 41. It even alleged—albeit in conclusory fashion—that Rabobank charged Villanueva fees in violation of Regulation E. Id. at 9 ("Unlawful Overdraft Fees Assessed to Plaintiff").[6] Rabobank agreed to the filing of the FAC in order

---

[6] Villanueva makes the additional point that "Defendant has all along had knowledge and records of the harm caused by its violation of Regulation E. In fact, in December 2021, Defendant produced Mr. Villanueva's account statements in the course of the litigation that included Mr. Villanueva's ATM and debit card transactions that resulted in an overdraft fee." Reply at 5 (citing Dkt. 1-6 at 303). The Ninth Circuit is clear, as Rabobank argued at the motion hearing, that defendants do not have a duty to investigate the necessary jurisdictional facts after receiving an

to allow Villanueva to add the Regulation E theory, and that is what the FAC did. The FAC therefore is quite possibly "an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable." See 28 U.S.C. 1446(b)(3).

### C. Other Paper

Even if the FAC did not start the removal clock, the case's removability was clear before the filing of the SAC. While Rabobank had no obligation to search its records for evidence of Villanueva's injury when it received the FAC, see Harris, 425 F.3d at 696, Rabobank had produced that exact evidence to Villanueva earlier in the case, see Notice of Removal Ex. B (dkt. 1-6) at 303 (Kim Decl.) ¶ 7, and Villanueva cited to that exact evidence in two filings prior to the SAC.

Those two filings are significant. First, in his opposition to Rabobank's demurrer, Villanueva argued that the state court should grant him leave to amend, stating that he "can add further allegations concerning Defendant's assessment of overdraft fees against his account," and listing specific overdraft fees assessed by Rabobank in connection with ATM withdrawals and point-of-sale debit card purchases. Notice of Removal Ex. B (dkt. 1-6) at 363–64 (citing Kim Decl. ¶ 7). Second, Villanueva filed a declaration from his counsel in support of his opposition to the demurrer, in which counsel stated that "if called upon, I could and would competently testify" that "Defendant produced Plaintiff's account statements on or about December 10, 2021" and that "[u]pon reviewing the produced account statements, it became evident that Plaintiff was assessed overdraft fees for ATM and point-of-sale debit card transactions" on specified dates. Id. at 301–03, ¶¶ 1, 7. These filings both occurred on December 30, 2022—more than thirty days before Rabobank removed the case. See Notice of Removal Ex. B at 343–64; id. at 301–03.

---

indeterminate complaint. See Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 696 (9th Cir. 2005). Nor is Rabobank's subjective knowledge relevant. See id. at 694 (removability determined by the applicable pleadings, not through defendant's subjective knowledge). As discussed below, however, it is significant that Rabobank had already produced the very documents to Villanueva that demonstrated his harm.

9

Both of these filings constitute the kind of "other paper" from which a defendant can ascertain a case's removability. See 28 U.S.C. 1446(b)(3) (" a notice of removal may be filed within thirty days after receipt by the defendant . . . of . . . other paper from which it may first be ascertained that the case is one which is or has become removable.") (emphasis added); see, e.g., Orange Cnty. Water Dist. v. 3M Co., No. 21-55778, 2022 WL 605630, at *1 (9th Cir. March 1, 2022) ("Assuming, without deciding, that a co-defendant's reply brief is an 'other paper' within the meaning of § 1446(b)(3)," citing Dietrich); Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 886–87 (9th Cir. 2010) (deposition testimony, like response to interrogatories, can be "other paper"); Eyak Native Village v. Exxon Corp., 25 F.3d 773, 779 (9th Cir. 1994) (reply brief is "other paper"); Rynearson v. Motricity, Inc., 626 F. Supp. 2d 1093, 1097 (W.D. Wash. 2009) ("The type of document that constitutes an 'other paper' for the purposes of the statute is broad, reflecting courts' 'embracive construction' of the term"; "an 'other paper' . . . is one that is 'generated within the specific state proceeding which has been removed'").

A recent case is instructive. The court in Rhodan v. Job Options, Inc., No. 19-cv-1141-CAB-BGS, 2019 WL 3887351, at *2 (S.D. Cal. Aug. 19, 2019), explained that a proposed SAC "was not the first document from [the] litigation indicating that Plaintiff worked at Camp Pendleton" because, even setting aside the fact that Defendants (Plaintiff's employer) "presumably knew all along that Plaintiff worked at Camp Pendleton," there were nonetheless "documents Defendants produced to Plaintiff more than thirty days prior to the notice of removal [to] indicate that Plaintiff worked there." The court added: "Although Defendants may not have had a duty to search their own records upon receipt of the complaint to determine removability . . . and even if their subjective knowledge that Plaintiff worked at Camp Pendleton did not trigger the 30-day time limit for removal . . . they cannot 'ignore' documents they produced in the litigation itself that demonstrate removability." Id. at *3. Likewise here, where Rabobank previously produced documents to Villanueva demonstrating that Villanueva had been injured under Regulation E, and then in two separate filings Villanueva cited to that same

10

evidence, Rabobank should have already ascertained that the case was removable before receiving the SAC.

Rabobank disputes that the opposition to the demurrer and the Kim Declaration put it on notice.  Opp'n at 15 n.8 ("[t]o the extent Plaintiff claims that some document other than the FAC—i.e., his submissions in opposition to Rabobank's demurrer to the FAC—started the 30-day removal clock, he is wrong.").  In support of that assertion, Rabobank cites to authority for the proposition that "[r]emoval jurisdiction based on an amended pleading arises only after the subsequent pleading becomes operative."  Id. (citing Jones v. G2 Secure Staff, LLC, No. CV 17-00061 SJO (SSx), 2017 WL 877293, at *3 (C.D. Cal. 2017)).  But in Jones, plaintiff's counsel had emailed defendant's counsel a proposed amended complaint, stating that plaintiff would file it in the next couple of days.  2017 WL 877293, at *1.  Defendants then jumped the gun, removing the action based on diversity jurisdiction before plaintiff filed the amended complaint.  Id. at *2.  The following day, plaintiff filed an amended complaint that differed from the proposed amended complaint in a meaningful way: the amount in controversy was far below the $75,000 threshold for diversity jurisdiction.  Id.  Plaintiff then argued that removal was premature because it was based on an unfiled proposed amended complaint, and defendants argued that a "document need not be filed in order to constitute 'other paper'" for the purposes of initiating the thirty day removal window.  Id.  The court held that the proposed amended complaint, which was "unfiled, unsigned, and not officially served" on the defendant, did not trigger the removal clock, and that "'[r]emoval jurisdiction based on an amended pleading arises only after the subsequent pleading becomes operative.'"  Id. at *3 (quoting Desmond v. BankAmerica Corp., 120 F. Supp. 2d 1201, 1203–04 (N.D. Cal. 2000)).  The court explained that the proposed amended complaint was not an "other paper," but an amended pleading under 28 U.S.C. § 1446(b)(3).  Id.

This Court agrees that a proposed amended pleading should not trigger the removal clock until it is filed.  A proposed amended complaint is not final, and a plaintiff could change his mind about whether to bring certain claims, or seek certain damages.  Here,

11

though, unlike in Jones, Villanueva did not send Rabobank a proposed amended complaint that he was considering filing. Villanueva filed on the docket the very proof that Rabobank argues was necessary to give his UCL claim sufficient federal flavor: proof that Rabobank had assessed Villanueva fees in violation of Regulation E. Admittedly, one of the two documents Villanueva filed referred to additional allegations that Villanueva could add to an amended complaint. See Notice of Removal Ex. B (dkt. 1-6) at 363–64 (citing Kim Decl. ¶ 7). But in doing so, it cited to evidence, in the form of the other document: the Kim Declaration. Id. The Kim Declaration asserted—based on a review of Rabobank's records, produced by Rabobank—that Villanueva had been assessed the relevant fees. Id. at 301–03, ¶¶ 1, 7.

Rabobank therefore did not need to wait for Villanueva to file the SAC to know whether Villanueva would include a UCL claim predicated on a Regulation E violation, whether Rabobank would be a named defendant, or whether Villanueva would have standing to bring such a claim. The "other papers" Villanueva filed on December 30, 2022—the opposition to the demurrer and the Kim Declaration—put Rabobank on notice that "the jurisdictional facts supporting removal [were] evident." See Harris, 425 F.3d at 698.[7]

The removal clock started to run no later than December 30, 2022. Because Rabobank waited more than thirty days after that to remove, removal was improper. The case belongs back the state court.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to remand.

**IT IS SO ORDERED.**

Dated: June 16, 2023

CHARLES R. BREYER
United States District Judge

---

[7] Note that Harris refers to jurisdictional facts, and not, as Rabobank calls them, "factual allegations." See Opp'n at 1 ("Before the SAC, there were no factual allegations starting this removal clock."). Allegations in an amended complaint are not the only things that trigger removal. See 28 U.S.C. 1446(b)(3).